OLIVE M. THOMPSON et al., Appellants, v. LEONARD W. MOTT
et al., Appellees.

**DEEDS:** Validity—Mental Incompetency and Undue Influence. Evi-
1  dence relative to the validity of deeds reviewed, and held insufficient
to show that the grantor was mentally incompetent to execute them,
or that they were the result of undue influence.

**TENDER:** Rejection—Effect. Even though a tender has been refused,
2  equity may require it to be kept good.

Headnote 1:    18 C. J. pp. 443, 445.    Headnote 2:    38 Cyc. p. 161
(Anno.)
Headnote 1:    8 R. C. L. pp. 945, 1032.    Headnote 2:    12 A. L. R. 938
(Anno.); 26 R. C. L. 647.

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

SEPTEMBER 21, 1926.

Suit in equity, to set aside certain transfers of real estate
made to the defendant Leonard W. Mott by James S. Mott. The

plaintiffs and the defendant Leonard W. Mott are brothers and sisters, and are the children and heirs at law of said James S. Mott, now deceased. The ground of attack upon the conveyances is that James S. Mott, at the time of such conveyances, was mentally incompetent to make the same, and that the same were obtained from him by undue influence. The issue was made by general denial of the petition. The trial court dismissed the petition of the plaintiffs, and entered judgment for defendants for costs. The plaintiffs have appealed.—*Affirmed.*

*Senneff, Bliss, Witwer & Senneff,* for appellants.

*Brate Wringer* and *Edwards, Longley, Ransier & Harris,* for appellees.

EVANS, J.—The case presented is essentially a fact case. No controversy is presented over any question of law. James S. Mott died November 11, 1923. He had been a widower for ten years. He left surviving him five children, who are the parties hereto. The defendant Leonard was the eldest of his children. It appears from both sides that James S. Mott during his lifetime was a man of strong individuality and will power. He was intelligent and well-read, and formed his own opinions. It is averred in the petition that he was inclined to socialism in his views. Nearly 30 years before his death, and shortly before his two older sons, Leonard and O. J., attained their majority, he engaged in the business of coal dealer, and also in the business of dairying. He took his sons into alleged partnership with him. Later, the firm took on the business of feeding stock in transportation over the line of the Chicago, Milwaukee & St. Paul Railway Company. This business consisted of taking charge of cars of stock, and unloading, feeding, and reloading the same, pursuant to the requirements of Federal law in such cases. This firm had full charge of that line of work for such railway company for a period of approximately 20 years prior to the death of James S. Mott. In 1912, friction arose between the son O. J. and his father, whereby the son retired from the firm and transferred his interest therein to the remaining parties. From that time, the business was carried on by the father and the son Leonard.

1. DEEDS: validity: mental incompetency and undue influence.

Cordial relations do not seem to have been resumed between O. J. and his father, and they were not on speaking terms at the close of the father's life. The younger son, Clint, was employed by the firm for a time, in the later years of his father's life, but after a brief time terminated his service, and was in no manner connected with the business thereafter. He did thereafter join his brother O. J. in the coal business.

The deeds under attack were made on various dates, as follows, November, 1921; September, 1922; June 5, 6, 7, 8, and 15, 1923. The decedent was 73 years of age at the time of his death. For the last four years of his life, he had made his home with his daughter, Mrs. Donnelly, one of the plaintiffs. That is to say, Mrs. Donnelly lived in a house belonging either to him or to the firm, and he lived with her. In June, 1923, the decedent was suffering from an enlarged prostate gland, and was contemplating an operation for relief therefrom. The preparatory operation was had on June 11, 1923, and the major operation on October 11th following. The deeds made on June 5th, 6th, 7th, and 8th were made in contemplation of his operation and in purported preparation for the untoward event. The preparatory operation, had on June 11th, was accomplished without other anæsthesia than a local application. The last two transfers made by him were made after such operation, on June 15th. The transfers bearing date June 5th, 6th, 7th, and 8th were all actually executed at the same time, on June 8th, though each was written on the date it bore. The properties transferred by the decedent to the defendant Leonard Mott were appraised by agreed appraisers at a total value of $73,000.

The affirmative contention on the part of the defendant Leonard may be stated briefly. It is that he had been in partnership with his father throughout his adult life; that during that time he had done the major part of the hard physical work of the partnership; that the major part of the property involved was acquired by and through the partnership, and with its funds; that, prior to 1912, he was the owner of one third of all the property acquired by his father since the partnership was entered into; that, by the withdrawal of his brother O. J., in 1912, he became the owner of one half of all such property; that his father recognized the fact that he alone of the children had been instrumental in the acquisition of the property; that it

was the deliberate desire and purpose of the father that he should have the bulk of said property; that his father, in making such transfers, imposed upon him the obligation to pay to the son Clint and to the daughter Mrs. Thompson the sum of $1,500 each, and to cause conveyance to be made to Mrs. Donnelly of the house in which she lived, valued at $7,000; that he assumed these obligations, and has at all times been ready and willing to perform the same. The foregoing is a sufficient outline to indicate the general nature of the respective contentions of the parties.

It appears that three of the properties involved in this controversy were owned by the father prior to entering into business relations with his son. What the values of these properties were at that time, is not made to appear. It does appear that a part of this property was improved and used by the partnership in later years. It does fairly appear from the record that the defendant Leonard was at all times the main, if not the only, reliance of the decedent in carrying on the business, whereby the larger part of his property was made. The record is very voluminous. We have given it most careful reading, and are brought thereby to a concurrence with the finding of the trial court. A fair consideration of the evidence as a whole brings us to the conclusion that there was no lack of mental capacity on the part of the decedent; that no undue influence was brought to bear upon him; that the purpose to make the conveyances originated with himself; and that he did thereby just what he wanted to do. Whether it was equitable, as between his children, is a question we cannot consider, except as a circumstance bearing upon the question of mental capacity and undue influence. If, on the one hand, the disposition made by the father seems inequitable to the other children, yet, on the other hand, it is apparent from the record that an equal division would be inequitable to Leonard. We have no power to apportion the property upon any basis. We must either sustain the deeds or nullify them.

It is the contention of appellants that, under the facts appearing in the record, such a relation of trust and confidence is shown as to cast upon the defendant the burden of sustaining the transaction by affirmative proof of consideration and fairness. We do not think that the evidence would justify us in saying that the defendant was under any disability to receive from his father any benefaction that the father chose to give him. This is

not saying that it did not behoove the defendant to offer full explanation of the transactions, so far as known to him, for the purpose of rebutting unfavorable inferences which might otherwise be drawn from unexplained circumstances.

To discuss the details of the evidence and their bearing upon the pros and cons of the question of fact fully discussed in the briefs of counsel would result in an opinion of undue length, and would serve no very useful purpose. In such a case, where our final conclusion supports the judgment below, we usually deem it sufficient to announce our concurrence with the finding below; and such will be our course herein.

Inasmuch as the defendant has tendered to the plaintiffs Olive Thompson and Clint Mott the sum of $1,500 each, which tender has not hitherto been accepted, the query now arises whether, by refusal of the tender, these plain- 2. TENDER: rejec- tiffs are not precluded from accepting the same. tion: effect. We are disposed to anticipate this query, and to hold the defendant to his tender of performance. It appears that the plaintiff Mrs. Donnelly had received a conveyance of the house intended for her, and had received the same before this suit was begun. She has not been embarrassed, therefore, by any question of tender. As to the other plaintiffs, they could not accept the tender of the defendant without abandoning their suit. In view of the finality of our affirmance of the decree below, the right of acceptance of the tender will be kept open to the two plaintiffs named, and provision therefor may be made in this court, if they so elect.

With this saving provision, the order of the district court dismissing the petition is affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.